Claude **EATON** et al., Appellees,

v.

Robert **BLACKMAN**, Appellant.

No. 20608.

United States Court of Appeals,
Eighth Circuit.

Oct. 26, 1971.

Frierson, Walker, Snellgrove & Laser, Jonesboro, Ark., on briefs for appellant.

Burris & Berry, Pocahontas, Ark., on brief for appellees.

Before JOHNSEN, VOGEL and ROSS, Circuit Judges.

JOHNSEN, Senior Circuit Judge.

Appellant Blackman owns and operates a service station and a cafe, known as "Blackman's Old Military Truck Stop", located on the highway outside Corning, Arkansas. The station is engaged in selling diesel fuel, gasoline, oil, grease, tires and other accessories at retail, and in performing incidental motor-vehicle services such as tire-repairing, etc. Eight former employees, whose work consisted in doing these service-station tasks, recovered judgments under the Fair Labor Standards Act against appellant, on a jury trial, for minimum-wage and overtime balances alleged to be due them under the provisions of 29 U.S.C. §§ 206 and 207.

Appellees had been paid a weekly wage of only $65.00, for six days work, of twelve hours each. The wage balances which would thus be owing to them for the period involved, if the business was subject to the Fair Labor Standards Act, were stipulated. The court left the issue of coverage under the Act to the jury's determination, as a question of whether the business was one which constituted, under 29 U.S.C. § 203 (s), "a gasoline service establishment whose annual gross volume of sales is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated)".

As proof of coverage, appellees relied upon the sworn answers which had been made by appellant to some interrogatories propounded to him in discovery. Thus, to the interrogatory "State the volume of Blackman's Old Military Truck Stop in dollars for calendar year 1966, 1967, 1968", appellant had answered, "Gross sales—1966—$282,782.83; 1967 —$347,192.72; 1968—$298,591.85". To the interrogatory "State the total dol-

lars volume of sales for Blackman's Old Military Truck Stop exclusive of excise taxes at the retail level which are separately stated", he had replied, "Our records do not enable us to answer this question and we have no way of breaking this down". To the interrogatory "For the calendar years 1966, 1967 and 1968, state the proportion of sales of Blackman's Old Military Truck Stop as follows: (a) Diesel Fuel (b) Gasoline, oil and grease (c) Tires, batteries and accessories, labor", he had similarly stated, "Records are not kept of these transactions separately".

At the trial, appellant testified that the gross receipts of the service station, including all taxes collected on the sales, had been $247,344.36 for 1966; $294,-531.34 for 1967, and $272,963.49 for 1968, but that with exclusion made of federal and state excise taxes and local sales taxes, the station's gross volume of sales had amounted to $154,387.21 for 1966, to $192,336.33 for 1967, and to $179,218.53 for 1968. He said, in explanation of the discrepancies between his interrogatory answers and his testimony, that "I think the first interrogatories we didn't really know what the people were after"; that "I made a mistake in figuring them up"; that "I think the first questions, when we first answered them, they were misunderstood"; and that "we didn't know how to write it correctly".

This general testimony was hardly explanation of such sufficiency, unequivocalness, and absoluteness, as would cause the interrogatory answers to be left without any probative capacity. Thus, if the interrogatory answers and appellant's testimony had constituted all the evidence at the trial on whether the service station's gross volume of sales, exclusive of excise taxes at the retail level which were separately stated, had amounted to $250,000, the court clearly would be entitled to leave the question of coverage under § 203(s) to the jury as a determination of the amount of the station's gross-sales volume. And it would be readily understandable how the jury, on the wages which appellant had been

paying, would choose to accept the sales amounts of his interrogatory answers as against his testimonial figures and explanation, as a basis for subjecting him to the application of the Act.

But it is contended that other evidence was adduced of such force and character as legally to make the interrogatory answers insufficient to entitle the jury to find that Blackman's Old Military Truck Stop had an annual gross volume of sales, exclusive of the excise taxes which it collected and made returns of, in the amount of $250,000 or more for any of the years involved.

This evidence consisted of records of the service station's business, brought into the court room and shown to have been made in regular course by a certified public accountant, engaged in that general business, from "daily check-out sheets" of the station. The check-out sheets contained the meter readings for the pumps, showing both the gallon total and the dollar total of each day's fuel sales. It was the accountant's duty to make such records for appellant of the amounts of the gross revenues and of the portions thereof that represented excise taxes on the fuels, collected by appellant from the purchasers at the time of the sales and subjected by him to excise tax returns and payment to the federal and state governments. The excise taxes were included in the amount paid by the purchaser and notice of this fact was given to him by a sign placed upon each pump, both gasoline and diesel fuel, stating that "This price includes all excise taxes".

The accountant had made summaries of the records prepared by him, from which he testified. These summaries showed that the amounts of the excise taxes which had been so collected, made the subject of excise tax returns, and paid by him to the federal and state governments were $92,957.15 for 1966; $102,195.01 for 1967; and $93,744.96 for 1968. Appellees made no attempt to impugn the correctness of these amounts, nor to dispute the fact that they had been made the subject of official return and payment by appellant as excise taxes

on the gasoline and diesel fuel sold by him. In this situation the jury could not brush the excise taxes aside and refuse to take them into account in determining whether appellant had done such a $250,000 gasoline-service-establishment business as was necessary to bring him within the operation of the Act.

Even using the gross sales figures of appellant's interrogatory answers as against those of his oral testimony,[1] the gross volume of appellant's sales or revenues, less the excise taxes competently and unimpeachedly shown to have been collected and paid over on the motor fuels sold by him, would be left as only $189,825.68 for the year 1966; $244,997.71 for the year 1967; and $204,846.89 for the year 1968. This would not bring appellant's business within the $250,000 sales-volume requirement of § 203(s), but would leave him exempt from the Act as to the years here involved.

These established and unimpeached excise tax realities from the records and the testimony of the accountant would have such legal force as not to be capable of being overcome by the mistaken or evasive interrogatory answers made by appellant to the effect that his records did not enable him to state the total dollar volume of the sales of Blackman's Old Military Truck Stop "exclusive of excise taxes at the retail level which are separately stated" or to enable him to set out "the proportion of sales" separately for diesel fuel, gasoline, etc. When appellant became aware, as he later must have, that his interrogatory answers were not correct in regard to what the records kept by the accountant showed, as related to a breakdown of the excise taxes, it would seem that he should in fairness have so advised appellees. The answers which he had made and had left standing until the trial were hardly the character of discovery duty and cooperation intended by the Federal Civil Rules. But neither was their substance such as could cast any probative doubt upon the existence of the facts established by the accountant's records and testimony.

■ On what has been said, the judgments must be reversed. Appellant argues that, pursuant to the motions made by him for a directed verdict and for judgment notwithstanding the verdict, we should remand the case with directions to the District Court to enter judgment in his favor and thus terminate the litigation. In the ordinary case we would normally do so. This, however, is a Fair Labor Standards Act case as to which a public interest exists in not having coverage avoided except upon the clear merits of the situation.

■ As we have indicated, the proof as it stands before us does not entitle it to be held that appellant is subject to coverage liability for the additional wages sought to be recovered. It would appear, however, that appellees may have been lulled into the belief from appellant's interrogatory answers that he had no such business records as would make it possible for him to establish what amount of excise taxes were involved in his sales prices, were collected by him as such, and had been paid over by him to the federal and state governments on that basis. Appellees were perhaps taken by surprise when the accountant's records were produced showing what the facts actually were in that regard, although they did not ask the court for any time to enable them to go over the records or to check the accuracy of the accountant's compilations and summaries in respect thereto.

Because of the circumstances existing as to appellant's interrogatory answers, because of his failure to make any subsequent disclosure or correction regarding the actual record situation, and in order to insure that justice will not on that basis have been miscarried in relation to the Fair Labor Standards Act, we

---

1. Testimony by the accountant showed that the figures of appellant's interrogatory answers consisted of the gross sales of both the service station and the cafe, inclusive of all taxes collected, and that those given by appellant in his testimony represented the gross sales revenues of the service station alone, inclusive of taxes.

shall exercise our discretion to remand the case, with leave to appellees to make check, within a reasonable time to be fixed by the District Court, of the actuality of the amounts, returns and payments shown as to the excise taxes. If any inaccuracy or other inherent weakness is found to exist, of such substantiality as to appear to call for a re-examination of the question of coverage under the Act, the Court shall allow appellees a new trial. If appellees are not able to show any such basis as to entitle them to further evidentiary proceedings, the court shall enter judgment in the case for appellant.[2]

Reversed and remanded.

2. Although the question is not here raised, and would not seem to be capable of being raised on the showing as to the payment of the excise taxes made in the present situation, the language of the proviso of § 203(s), "exclusive of excise taxes at the retail level which are separately stated", is not without some ambiguity. Under the provisions of 26 U.S.C. § 4041, federal excise taxes on highway vehicle fuels other than gasoline are clearly imposed at the retail level. The federal excise taxes relating to gasoline under 26 U.S.C. § 4081 are made to appear in the Chapter entitled "Manufacturers Excise Taxes". But as stated in C.C.H. Labor Law Reporter, par. 24,105.262, Sec. 779.262, at p. 37,044, "The circumstances surrounding the levying and collection of the Federal Excise Taxes on gasoline * * * reflect that although they are listed under the title of 'Manufacturers' Excise Taxes', they are, in practical operation, taxes 'at the retail level'". In respect to the Arkansas excise taxes, all state excise taxes on gasoline and diesel fuel appear to be regarded, for purposes of 29 U.S.C. § 203(s), as taxes levied at the retail level. See C.C.H. Labor Law Reporter, supra, ibid.